Mr. Reba, did I pronounce that correctly? Like Reba McIntyre. You've got that one right, Judge. May it please the court, my name is Stephen Reba, and I represent the appellant, Dr. Noel Chua. This case is on direct review from the Northern District of Georgia's dismissal of Dr. Chua's action under 42 U.S.C. 1985, Georgia's RICO statute, and the federal RICO statute. Dr. Chua spent more than 11 years incarcerated before his murder conviction was vacated. During those 11 years, he spent much of his time in Georgia's highest security prisons because he was convicted of murder. Beyond the physical and mental strife associated with his prison service, the defendants in this case took everything that Dr. Chua had through a civil RICO action during the pendency of his murder case. His house, his home, his property, his bank accounts. Reducing the more than $2 million the doctor had earned through a successful medical practice to a mere $14,000 they returned via check. Let's get to some matters. The Barton Doctrine, it seems to me, does not apply. As I understand what the Barton Doctrine is about, and our case law is not clear about that. And some of our sister circuits case law is not clear about this. But the concern of the Barton Doctrine is that is one about NREM jurisdiction. That is, where you have a receivership, and the jurisdiction is NREM, and a claimant has a claim against a receiver, but it's asserted against the receiver for the purposes of obtaining relief against the rest, against the property that is the subject of that proceeding, of the receivership proceeding. You have to go to the receivership proceeding to seek relief. And, and that's true, even if it's a state court proceeding you can't, can't interfere with that NREM jurisdiction in federal court. That's a long standing principle of federal jurisdiction. And the receivership that had ended here. So there's no longer an NREM proceeding to be interfered with. But it seems to me that the problem here is that if, if, if what the complainant is complaining about against the risk of receiver, or the receivers agents are acts taken within the scope of their work for the receivership. That judicial immunity applies instead and in fact some of the cases in this area, the Seventh Circuit case Judge Posner wrote really sounds more like a policy argument about judicial immunity as opposed to the Barton Doctrine. And, and so my concern is that in so far as this complaint challenges acts that were taken within the context of that within the scope of the receivership duties that it's barred by judicial immunity, separate from the Barton Doctrine. Yes, Judge and I'll address that. So, our argument, of course, is that this occurred while the receivership was pending. But the actions taken by the receivers were so far outside of the realm of the receivership that that would not apply. You have defendant Lambros the receivers law firm and his partner, Andrew economy. They're appointed the receiver in 2006 in 2011. During the pendency the receivership, Mr economy also is now serving as a district attorney in the Brunswick. Here's the problem judicial immunity for receivers would apply, even when the receivers acts were in error malicious or were in excess of his or her jurisdiction. Right. Right, but but not if they are illegal right or criminal. And, in fact, just addressing Miss defendant economies services both the private attorney, and the council, the council, the district court separated out the allegations you're talking about from the receivership allegations regarding Mr economy. Excuse me. I don't think that Mr Lambros, you've alleged anything outside the receivership, frankly, but with regard to Mr economy, you may have alleged things outside but the district court separated those out and said at least as to some of it qualified immunity applies. And as to other things, there isn't sufficient allegations. So, there's multiple levers multiple layers of why the district court said that you do not have a successful complaint here. Right. Right, but but in our complaint we've we've alleged that they've gone so far outside of the scope right defender defendants Lambros and economy committed fraud and theft and their handling of the assets. Your complaint alleges that Lambros acted with the approval of the court that appointed correct community judicial immunity has to apply to that. But in securing a conviction of Dr Chua and engaging in these, these, these efforts, right, that can't possibly be part of the receivership, right, the active actually I mean your complaint alleges that it was with, with the approval of the court. Well, the approval in the, the approval in the sense that they were appointed receiver but that doesn't mean it by taking their actions they're operating within the parameters of that receivership isn't your better argument for judicial immunity that that the Starks doctrine applies here. Yes, yes, judge. In this, in this case, it's so factually involved. It is so exceptionally factually involved and what I what I'm trying to emphasize is that the facts as alleged are accurate. It cannot be dismissed by the appellees as there's some frivolous sort of allegations, we vacated a murder conviction, based on what's alleged in this complaint, and we've not even had the opportunity. Right, we've not even having the opportunity to engage in discovery. So here we have, we have issues of jurisdiction and immunity so intertwined with the merits of the case yet we've been thrown out of, we've been thrown out of court for failing to state a claim. Now, I really cannot was Mr economy, not entitled to qualified immunity at least as to the Rico claims regarding his actions as a prosecutor. He's illegally serving as a prosecutor while also serving as a private attorney it's under your you haven't alleged a complaint based on his legal service as a prosecutor you you've alleged in the complaint that he was part of a conspiracy to convict your client and steal his money. It is, in other words, you haven't filed a bar complaint here, or maybe we have but that's separate from this. Correct, we cited the statute 15 1821 and put it in our complaint said that his dual participation was clearly in violation subsection a that statute. Right, but that but that's that's besides the point from what your allegations are and what what the Rico is the Rico isn't that you had a prosecutor who was who is had a side job against bar rules or against the statute, your complaint is that he was part of a conspiracy to convict your client wrongly and to steal all his money, and then to cover it up. Right. Correct, including. So what actions as a prosecutor were clearly established to to have been in violation of the law. Judge in this case in 2012 right this is this is years after the trial. We discovered I discovered a memorandum in their file that blatantly said, keep blacks off the jury right Mr economy didn't write that memo wasn't part of the prosecution team. What he did do is litigate the open records thing. And I guess my question to you is, how can it be clearly established that that was wrong when the trial court ruled in his behalf, and the all the appellate court did was simply say you need an evidentiary hearing on this, what clearly established law says, and by the way the open records law recognizes an attorney client privilege defense and has a good faith defense. So, how can we say that that clearly established law says that this record was an open record under those facts that are all part of your complaint, and part of the statute. Judge, just to point out what happened as regards to this this memorandum when it was discovered, and this is part and parcel of of the environment we're dealing with in this judicial circuit. They in their answer accused me of drafting the memorandum and planting it in the file, and then insinuated when I was going to come down there to litigate things that I can potentially get arrested. So throughout this entire process, they intend they attempted to thwart us through not only the litigation, which was absurd on its face because they ended up handing over the memory absurd on its face when the trial court, a different trial court by the way, not the not in your favor, and that the appellate court the best remedy you got was you need an evidentiary hearing on this judge at the habeas hearing and this relates to the open records district attorney, Jackie Johnson appeared, and she after three years, right Well, that doesn't mean it's attorney client, that doesn't mean it's not attorney client privilege that she herself didn't see it. If one of her attorneys prepared a memo or someone prepared a memo in the course of litigation that she ended up not using and put in the file that doesn't mean that it's not privileged to work product. They ended up handing over the memory. I'm not saying they didn't but I was clearly established, I was stated that it was stated throughout the litigation that it was used right and we took depositions of judges, it was used in anticipation. She clearly established that Mr economy litigating this was on was in violation of federal law, or a constitutional right of your client. Judge that particular piece is only one grain of sand in the conspiracy and what they engaged in right but for Mr economy that was the the non receivership everything else goes back to what Chief Judge prior said is within the context of the receivership. So, he's acting as a private attorney and the receiver during at the same time he's acting as the, the assistant district attorney in the case right which is in violation of Georgia law so I guess if right if create any civil liability though to your client. I'm sorry, my, my, you know, let's say, let's say, you know, he was violating some Georgia statute that doesn't have anything to do with a civil liability to your client that's clearly established that it would overcome qualified immunity for anything outside the scope of the receivership. Well, judge, if it's illegal right and he's engaging in that act, then to say it's a part of the receivership, would it be to say illegality is in type is that that's not my question my questions about the, what would have been a clearly established right. That was violated with respect to your client, you can't get you pointed like Georgia open records laws and statutes that have nothing to do with any civil liability to your client. One of those things have to do with it, let's, let's say there are acts that you alleged in your complaint that are outside the scope of the receivership and therefore aren't protected by judicial immunity. What is there, though, for purposes of qualified immunity that it that that that creates a clearly established civil liability to your client. I mean, I mean don't point me to the open records act because that doesn't do it for. But the right to a fair trial the way to be free from 11 years of incarceration there continued, I mean this man's in Georgia's high security prisons, why they're why they're engaging in these illegal actions, so I understand this case on many levels, it has no comparable sort of analog it's just it's i've been a part of it for 10 years. When you, when you start saying things like this has no comparable analog fact that doesn't that doesn't help you in a qualified immunity argument. I think it does because they're so far outside of the scope of what would give them qualified emerging factually so far outside it in fact supports our position, and I see my time. Is there, are there any other questions. Okay. So, Mr Quinn. Thank you, Your Honor Stephen Quinn representing a Pele Steve Barry and it sounds like the Court is primarily interested in immunity issues that actually do not apply to the claims against my client and I'll let Mr Rogers address those. But from our perspective, this appeal as to Mr Barry is frivolous and Mr Barry should not have had to participate. You know, the only allegation in the complaint against Mr Barry is that he wrote a memorandum that was basically giving advice on jury selection to the district attorney coming in from another county and. There, the key allegation against Mr Barry is that he was part of a conspiracy, but that paragraph of the complaint says that upon information and belief, Mr Barry joined a conspiracy that is far short of the pleading standards for conspiracy claims like Rico. Here's, here's my concern, though, even if it were true that the conspirators tried to keep black chores off the panel, and the hopes of keeping of increasing the chances of obtaining Jewish conviction that allegation does not mean that the conspiracy was I completely agree, Your Honor, and that was the grounds upon which the district court dismissed the claims under 1985 under the United Brothers and Carpenters case that's a required element of any such claim, and not only was it not alleged in the complaint. But as to Mr Barry, the complaint actually included an allegation to the contrary, which was that Mr Barry was motivated by a personal animus against Sheriff Bill Smith, and so the complaint is self defeating on that claim. You know the only that was one of the items appealed as far as Mr Barry is concerned in 1985, and the other was the appellant has contended that the district court should have given leave to add a section 1983 complete count. That was not next that the district court didn't abuse its discretion but just but but says, right, just as a matter of fairness, it ought to be a lot. That's right, Your Honor on page 50 is basically admits that discretion was not abused. There's 11th Circuit case law. How we can reverse the district court, when, when there's an admission the district court didn't abuse its discretion. I couldn't agree more, Your Honor. Unless the panel has questions for me I'm prepared to yield my time to Mr Rogers. Okay, Mr Rogers. Thank you and may it please the court john Rogers from Michael Lambros and Andrew economy. The major point I want to make this morning is that there are multiple independent grounds on which this court can affirm the judgment. You understand my point about the Barton doctrine but the judicial immunity is a far more serious issue. Yes, sir, I do. And the court does not have to decide the Barton issue. If it doesn't want to counsel, discuss to me how sparks, so I want to go to judicial immunity, discuss to me how sparks, which, which opposing counsel does argue in his brief does not apply here, where the judge is alleged to have been the judge who blessed everything that happened is alleged to be in on a conspiracy and part of the corruption. There are two problems with the sparks and argue. One is they haven't pledged the conspiracy with any sufficiency to in sparks, the people who were denied immunity were private actors. In this case, Michael Lambros was a receiver, he's a public actor, he stands in the shoes or in the robe of judge for sparks purposes. And so Michael Lambros still enjoys that judicial immunity sparks did not say that other public officials lose judicial immunity they conspire sparks simply says that private actors cannot claim immunity if they conspire with the judge and immunity I think is the simplest alternative ground on which this court can affirm, I think we have to address the Barton doctrines because the the dismissal, based on lack of subject matter jurisdiction, but if it doesn't apply it to judicial immunity is the doctrine, then it's a merits based defense, so I don't. I think we have to say something about the Barton doctrine. Judge I'll say something about the Barton doctrine, I may I think the Barton doctrine. There's an argument that the Barton doctrine still governs here because you've got an additional concern here, that's not present in the typical Barton case and that's the You read our recent decision and tops. Yes, sir. Toss is distinguishable, because in Tufts, there was a discussion of the tactical jurisdiction of the bankruptcy court. I don't think both based on interim jurisdiction. And once the receivership is over, that's no longer a concern, and it just as it isn't in bankruptcy, which is what I've said, judge that's one of the concerns, but it's not the only concern. Some of the other concerns mentioned in even in the Tufts opinion itself include the burden that lawsuits place on trustees and receivers, the difficulty. See, all that seemed to me goes to judicial immunity. I agree. I think there's confusion in the case law about this. And, and, you know, those kinds of concerns about being free from litigation for the acts that you're taking as as a trustee or as a receiver. Those are immunity concerns. Those are not Barton doctrine concerns. They are concerns mentioned in the Barton cases. Barton cases, but not Barton. If you go back and read, which it's actually mentioned in Tufts I think it's made. I was mentioned in one of this court's earlier opinions from the 80s decided in the brief. But I want to make sure that I have a chance to talk about what you judge luck called multiple levels of problems will counsel if I if I could get there so I want to ask a question. And that's a pretty fundamental question. And that seems to be a matter of confusion for everybody. And that is that as I understand our case law. We are quite clear that qualified immunity does not apply to 1985 actions to conspiracy actions. We've said it time and time again. And yet, nobody brings that up from the district court all the way to now. So, even if I agreed with you that qualified immunity applied for the Rico allegations. How can we say that qualified immunity applies for the civil conspiracy under 1985. Judge I'd refer you to the Supreme Court's opinion in Ziegler versus a bossy, which is 137 Supreme Court, 1843, from the year 2017, and they're the Supreme Court discuss and I believe I'm correct to say that it applied qualified immunity to claims under 1985 free. And I will take a look at it but we have case law. As recently as 2010, or anything throughout it being quite clear that public officials will not be subject to liability under that that I'm sorry that public officials cannot raise a qualified immunity offense to a section 1983 subsection three claim, and I hope the case you're citing to me is a subsection three claim which is what we're talking about here, because we've been specific about that. Your Honor, I must confess this is something I looked at just at the last minute and I really don't profess any expertise because it was not briefed below, or up here. But I would refer the court, I mean we can't make a mistake of law, we can apply it. If, if, if it's wrong if it cannot be applied. If it cannot be asserted. Well, I think the court can still find the waiver, because there was no conspiracy, there was no argument below that, that you cannot give qualified immunity to claims of conspiracy under 1983, so the court could find the way. But even if we assume, let me ask you this, what are the allegations for 1985 against your client. Well, there really aren't any and that's yet another ground on which the court can affirm that there's no allegation and pleadings that part of them, it's the, it's the memo conspiracy it's your client was part of the one who, again, this is alleged I'm not saying it happened. Your client was part of the conspiracy to hide this document and hide the fact that that they had during jury selection, a violated Batson right. So, there's no allegation that we had anything to do with the memo, the truck or the trial either. Well, no, but I meant hiding it when it was discovered so that you know once it's discovered, there's the open records litigation where your client was involved in making sure it didn't come to light today, and then the habeas litigation to make sure that it wasn't used. That's the allegation but I guess my question is, if the trial court ruled as judge prior discussed that that memo can't be a basis for a 1985 action because there's no animus against the plaintiff here, which is what must be shown, then wouldn't that be as true for your client as it would be for Mr Barry. Yes, absolutely. So is that not the basis by which we could affirm 1985 subsection three claim against your client, irrespective of whether there's qualified immunity for that or not. Yes, absolutely. And, yes, I guess my concern was the way I read this, this is a somewhat confusing case was that the only arguments really that are made against your client about what rights he he allegedly violated all pertain to how he conducted the open records litigation, and none of which, as far as I could tell involved any any laws that create civil liability to to the plane. Judge I think that's correct. Just to be clear, the open records allegations are made against Andrew economy. In fairness, there are different allegations made against the receiver Michael. Right, right. We're talking about Mr economy sorry. Yes, sir. That's correct. I'm just very briefly another one of those multiple levels to me, I mean, the problem with Lambert's just everything that Lambert's does is protected by judicial immunity. That's what we continue to judge yes. And I'll also just briefly mentioned the statute of limitations, the pleadings alleged that is early as 2007. Michael Lambros was filing reports that were false on their face. And by 2010 he was a filing report that showed again on its face embezzlement. As I understand the statute of limitations regarding Rico, which is where we're coming up at least with regard to Rico, that it's the last predicate act that causes a harm that the statute of limitations needs to be triggered towards. And here there's at least an allegation regarding the the plea agreement that was entered into, and there's allegations regarding the legality of that plea agreement in 19 I think it's a 2017, which would be within the 14 year or the four years and five statutes right. Judge we argue that it's not the last predicate act, it's under its its inquiry notice under federal and state law. Right, except, except where the predicate act creates an independent harm for which, then it goes to and that I mean there's, there's tons of new Rico predicate actives rise to a new and independent injury, the statute of limitations clock will start over for the damages caused by that new act. We would contend that it's all part of the same conspiracy. How's it not an individual, how's the plea agreement not an individual harm. That's independent of the money that was taken that's independent of anything else. Again, assuming you assuming it is a double jeopardy violation which is what the allegation is. And your honor I'm out of time and go ahead and answer. Yeah, of course. The pleadings alleged that the plea agreement was all part and parcel of the same spirit. And if the theory is that they all conspire, then they had inquiry notice of the conspiracy as early as 2007. Thank you. Thank you. Mr. You have three minutes. Regarding that plea agreement, where Dr. Chua pled guilty to the dwelling house count which had been invalidated on direct appeal. This was done purely to try to secure the forfeiture. And on that point and this goes to, I know we're, we're, we're talking as if Barton doesn't apply and that's that's accurate. But it goes to just everything involved with this case he was also banished a part of that plea agreement could not come back to that circuit, or the way can you speak can you speak to the heck versus Humphrey issue what does this do to the underlying criminal conviction that he has pled guilty to in the plea agreement. What does this act, Your Honor, what does this action due to that would it undermine his criminal conviction. I don't believe it would Your Honor and to be honest, that's what we have been so incredibly cognizant of throughout this entire process. We were scared to come back and ask the court for leave we were scared to step foot in that place because the way that things had been conducted right this is a jurisdiction where they left a memo like that just sitting around, no one thought to destroy it just par for the course right impunity. You know this this is a terrifying place for him. I was threatened with arrest effectively in the answer. So, this is all done through coercion and the fact that we have to plead to an invalidated count to try to secure the forfeiture is is telling. And this case is so the merits with the issues of immunity are so intertwined. It is really an injustice that we cannot engage in discovery, when these same facts invalidated a conviction, handed down by a jury, right so we have everyone involved with this thought it was egregious enough, which was, which was. Am I right, though, which was then followed by a different conviction. We pled guilty to involuntary manslaughter and he walked out of the prison for time, sir. Right. I mean, it's not that he no longer has a conviction, he does. That's correct judge but that's because he's, he's, you know, you can say whatever you want. That's because he has a conviction. Absolutely. He's convicted of involuntary manslaughter and keeping a dwelling place which was invalidated on direct appeal in 2011. But the point my overarching point remains these things were simply just done to get him out of prison obviously life is finite life is extraordinarily finite in prison so that there's no guarantee you're living next week. So, you know, all we are saying is give us the there's viability to these issues they're intertwined issues of immunity issues of the merits and this this court had has held that when that's the case, it's not appropriate to dismiss a case as this one was dismissed, and I see my time has Thank you, Mr. We have your case and we will now move to the last one for today.